UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**22-60186-CR-DIMITROULEAS/HUNT**

CASE NO. _____

18 U.S.C. § 1344(1) and (2)
18 U.S.C. § 1343
18 U.S.C. § 982(a)(2)(A)

**UNITED STATES OF AMERICA**

vs.

**DAMIAN DAVIS,**

        **Defendant.**
_____/

FILED BY ___KAN___ D.C.

Aug 30, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all material times to this Indictment

### The Small Business Administration

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

## The Paycheck Protection Program

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted March 27, 2020, to provide financial assistance to Americans suffering economic harms from the COVID-19 pandemic. One source of relief provided through the CARES Act was the authorization of forgivable loans to businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP").

4. To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

5. A PPP loan application had to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were fully guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the reports and documents regarding the business's income and expenses, were transmitted by the lender to the SBA in the course of processing the loan.

6. PPP loan proceeds were required to be used by the business on certain permissible expenses-payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and

principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

**Defendants and Other Entities**

7. Bank 1 was a financial institution based in Salt Lake City, Utah, with deposits insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank 1 was an approved SBA lender of PPP loans.

8. Bank 2 was a financial institution based in New York City, New York, with branches in Florida, and deposits insured by the FDIC. Bank 2 was an approved SBA lender of PPP loans.

9. Bank Processor 1 was a third-party company processor based in San Jose, California, that processed PPP loan applications for Bank 1.

10. Wolf of Flagler, LLC ("Wolf of Flagler") was a Florida corporation with its listed address in Ft. Lauderdale, Florida.

11. 5th Marketing Group ("5th Marketing") was a Florida corporation with its listed address in Pompano Beach, Florida.

12. Crates Tavern, LLC ("Crates Tavern") was a Florida corporation with its listed address in Pompano Beach, Florida.

13. Defendant **DAMIAN DAVIS** was a resident of Broward County, Florida, and the listed Authorized Member of Wolf Flagler, 5th Marketing, and Crates Tavern.

**COUNTS 1-3**
**Bank Fraud**
**(18 U.S.C. § 1344)**

1. The General Allegations section of this Indictment is re-alleged and incorporated fully herein by reference.

2. From on or about June 5, 2020, through on or about September 22, 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**DAMIAN DAVIS,**

did knowingly, and with the intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, one or more financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, Untied States Code, Sections 1344(1) and (2).

**PURPOSE OF THE SCHEME AND ARTIFICE**

3. It was the purpose of this scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent PPP loan applications; and (b) diverting fraud proceeds for the defendants' and accomplices' personal use, the use and benefit of others, and to further the fraud.

**MANNER AND MEANS OF THE SCHEME AND ARTIFICE**

The manner and means by which **DAMIAN DAVIS** sought to accomplish the objects and purpose of the scheme included, among other things, the following:

4. **DAMIAN DAVIS** and his accomplices created online loan application accounts with Bank 2 for Wolf of Flagler and 5th Marketing, as well as an online loan application account with Bank Processor 1 for Crates Tavern.

5. **DAMIAN DAVIS** and his accomplices submitted and caused the electronic submission of fraudulent PPP loan applications for Wolf of Flagler, 5th Marketing, and Crates Tavern, via interstate wire communications.

6. The PPP loan application for Wolf of Flagler and 5th Marketing were submitted to Bank 2, while the PPP loan application for Crates Tavern was submitted to Bank Processor 1.

7. In furtherance of the scheme, **DAMIAN DAVIS** and his accomplices submitted false and fraudulent information and documentation in support of the PPP loan application, including falsified payroll and business tax forms, among other things, and falsely and fraudulently represented the businesses' number of employees and amount of monthly payroll.

8. As a result of the false and fraudulent PPP loan applications submitted, to Bank Processor 1 and Bank 2, as part of this scheme, Bank 1 and Bank 2 approved the PPP Loans and disbursed a combined total of $586,545 in PPP loan proceeds, which were transferred to accounts controlled by **DAMIAN DAVIS** via interstate wire transmission.

9. **DAMIAN DAVIS** used the proceeds from the fraud scheme for his own use, the use of others, and to further the scheme.

## **EXECUTION OF THE SCHEME AND ARTIFICE**

10. On or about the dates specified below, in Broward County, in the Southern District of Florida, and elsewhere, **DAMIAN DAVIS** did execute, and attempt to execute, and cause the execution of, the above-described scheme and artifice to defraud, as more particularly described below:

| Count | Approximate Date | Execution |
|---|---|---|
| 1 | June 5, 2020 | Submission of a false and fraudulent PPP loan application to Bank 2 on behalf of Wolf of Flagler, which resulted in Bank 2 depositing approximately $128,400 in PPP loan proceeds into a Bank 2 account ending in 0698 controlled by **DAMIAN DAVIS** |
| 2 | June 27, 2020 | Submission of a false and fraudulent PPP loan application to Bank Processor 1 on behalf of Crates Tavern, which resulted in Bank 1 depositing approximately $183,780 in PPP loan proceeds into a Bank 2 account ending in 9170 controlled by **DAMIAN DAVIS** |
| 3 | July 27, 2020 | Submission of a false and fraudulent PPP loan application to Bank 2 on behalf of 5th Marketing, which resulted in Bank 2 depositing approximately $274,365 in PPP loan proceeds into a Bank 2 account ending in 5956 controlled by **DAMIAN DAVIS** |

In violation of Title 18, United States Code, Sections 1344(1) and (2), and 2.

### COUNT 4-6
### Wire Fraud
### (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is re-alleged and incorporated fully herein by reference.

2. From on or about June 5, 2020, through on or about September 22, 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**DAMIAN DAVIS,**

did knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

6

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of this scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by among other things: (a) submitting and causing the submission of false and fraudulent PPP loan applications; and (b) diverting fraud proceeds for the defendants' and accomplices' personal use, the use and benefit of others, and to further the fraud.

## THE SCHEME AND ARTIFICE

4. The Manner and Means section of Counts 1-3 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## USE OF THE WIRES

5. On or about the dates specified below, in Broward County, in the Southern District of Florida, and elsewhere, **DAMIAN DAVIS**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| Count | Approximate Date | Execution |
|---|---|---|
| 4 | June 19, 2020 | A wire transfer in the amount of approximately $128,400 from Bank 2 to the account of Wolf of Flagler ending in 0698 at Bank 2, causing a wire transmission from outside of Florida to the Southern District of Florida |
| 5 | June 30, 2020 | A wire transfer in the amount of approximately $183,780 from Bank 1 to the account of Crates Tavern ending in 9170 at Bank 2, causing a wire transmission from outside of Florida to the Southern District of Florida |
| 6 | July 29, 2020 | A wire transfer in the amount of approximately $274,365 from Bank 2 to the account of 5th Marketing ending in 5956 at Bank 2, causing a wire transmission from outside of Florida to the Southern District of Florida |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **DAMIAN DAVIS**, have an interest.

2. Upon conviction of a violation of and/or a conspiracy to violate Title 18, United States Code, Sections 1343 and/or 1344, as alleged in this Indictment, the defendant shall forfeit to the United States any property, constituting or derived from, any proceeds obtained, directly or indirectly, as the result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3. The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to:

    a. a 2012 Grey 2-Door BMW vehicle, VIN No. WBAKG1C58CE839528; and

    b. a sum of approximately $586,545, which represents the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

4.  If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

A TRUE BILL

_____
FOREPERSON

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BERTILA LILIA FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

DAMIAN DAVIS,

_____/
**Defendant.**

**Court Division** (select one)
- ☐ Miami
- ☐ Key West
- ☐ FTP
- ☒ FTL
- ☐ WPB

CASE NO.: _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____
Number of New Defendants ____
Total number of New Counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) **No**
   List language and/or dialect: _____

4. This case will take **5** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☒ 0 to 5 days
   - II  ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) **No**
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) **No**
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) **No**

By: _____
Berdila Lilia Fernandez
Assistant United States Attorney
FL Bar No.        012492

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Damian Davis

**Case No**: _____

Counts # 1-3:

Bank Fraud

Title 18, United States Code, Section 1344(1) and (2)
\* Max. Term of Imprisonment: 30 years
\* Max. Supervised Release: 5 years
\* Max. Fine: $1,000,000

Counts #4-6:

Wire Fraud

Title 18, United States, Section 1343
\* Max. Term of Imprisonment: 20 years
\* Max. Supervised Release: 3 years
\* Max. Fine: $250,000

\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.